IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN BOLDEN (07mj329),<br>WILSON CLEAVES (07mj330),<br>CLARENCE ROSS, III (07mj331),<br>and NELL BROCKS (07mj332),<br><br>Defendants. | Nos. 07mj329<br>07mj330<br>07mj331<br>07mj332<br><br>ORDER FOR PRETRIAL<br>DETENTION |

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   Allegations of Criminal Activity. . . . . . . . . . . . . . . . . . . . . 2
        1.   The Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . 2
        2.   The Controlled Buys. . . . . . . . . . . . . . . . . . . . . . . 3
        3.   The Search. . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.   Background Information. . . . . . . . . . . . . . . . . . . . . . . 5
        1.   John Bolden. . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.   Wilson Cleaves. . . . . . . . . . . . . . . . . . . . . . . . . . 6
        3.   Clarence Ross, III. . . . . . . . . . . . . . . . . . . . . . . . 6
        4.   Nell Brocks. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. CONCLUSIONS OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . 7
    A.   Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B.   Application to the Facts. . . . . . . . . . . . . . . . . . . . . . . 9
        1.   John Bolden. . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.   Wilson Cleaves. . . . . . . . . . . . . . . . . . . . . . . . . 10
        3.   Clarence Ross, III. . . . . . . . . . . . . . . . . . . . . . . . 10
        4.   Nell Brocks. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV. ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 21st day of December, 2007, these matters came on for hearing on the Government's request to have the Defendants detained prior to trial. The government was represented by Assistant United States Attorney Patrick J. Reinert. Defendant John Bolden was present and represented by his attorney, Stephen A. Swift. Defendant Wilson Cleaves was present and represented by his attorney, John Jay Rausch. Defendant Clarence Ross, III was present and represented by his attorney, Patrick Joseph Kelly. Defendant Nell Brocks was present and represented by her attorney, Webb L. Wassmer.

Prior to the hearing, all counsel agreed that due to common questions of fact, the detention hearing for each Defendant could be combined into a single proceeding. The Court, however, has considered the facts as they relate to each of the individual Defendants in determining whether pretrial detention is appropriate.

## II. RELEVANT FACTS

### A. Allegations of Criminal Activity

#### 1. The Complaint

On December 20, 2007, each of the Defendants were charged by Criminal Complaint. Defendants Wilson Cleaves ("Cleaves"), Clarence Ross, III ("Ross"), and Nell Brocks ("Brocks") were charged with distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Defendant John Bolden ("Bolden") was charged with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 836. At the preliminary hearing on December 21, 2007, the Court found probable cause to believe that each Defendant had committed the offense charged.

The facts underlying the charges were described at the hearing by Marion Police Officer Brian Heinricy, who is currently assigned to the DEA Task Force. The sworn Criminal Complaints and Heinricy's testimony describe eight controlled buys between November 29, 2007, and December 18, 2007. Six of the buys occurred at an apartment on 16th Avenue SW in Cedar Rapids, occupied by Bolden, Cleaves, Ross, and Zachariah

Benjamin ("Benjamin"). The remaining two buys occurred at a house on 32nd Street NE in Cedar Rapids, occupied by Brocks. According to Officer Heinricy, each of the controlled buys were monitored by law enforcement officers and recorded by an audio and video device.

### 2. *The Controlled Buys*

On November 29, 2007, a Confidential Informant ("CI") called the apartment, talked briefly with Bolden, and got permission to "come over." When the CI arrived at the apartment, Bolden let the CI in, but then returned to a chair, where Ross was working on Bolden's hair. Cleaves took $150 in cash from the CI and returned a plastic baggie containing 3.1 grams of cocaine.

On December 4, 2007, the CI called the apartment and talked to Benjamin. When the CI arrived at the apartment, Bolden answered the door. The CI asked Bolden how much they could get for $250, but gave Cleaves the cash. After waiting in the back bedroom, the CI received four wrapped baggies from Cleaves, containing 7.1 grams of crack cocaine.

On December 7, 2007, the CI called the apartment and talked to Benjamin. Upon arriving at the apartment, the CI saw Benjamin, Bolden, and an unknown white male in the hallway, moving a couch. Upon entering the apartment, the CI gave Ross $250 and received a bag containing 7.0 grams of crack cocaine.

On December 13, 2007, the CI made a phone call to the apartment and talked to an unknown male. Upon arriving at the apartment, Cleaves answered the door. The CI gave Ross $300 and received 5.5 grams of crack cocaine and $50 in change. The CI was told that they did not have enough crack for the full $300, but would have more in fifteen minutes.

On December 17, 2007, the CI called the apartment and talked to Bolden. Upon arriving at the apartment, the CI gave Cleaves $300 and waited by the door. Cleaves gave the money to Benjamin, who retrieved crack cocaine, which was then given to Cleaves,

who handed it to the CI. According to the sworn Complaint, the substance weighed approximately 8.7 grams with packaging.

Also on December 17, 2007, a controlled buy was made at Brocks' residence. After calling first, the CI went to Brocks' house, gave Brocks $300, and received 7.5 grams of crack cocaine.

On December 18, 2007, the CI called the apartment and spoke with Bolden. After arriving at the apartment, Bolden answered the door. (While the Complaint alleges Benjamin answered the door, Officer Heinricy testified that the video confirms that Bolden answered the door.) The CI gave Benjamin $400 and received 12.5 grams of crack cocaine in exchange.

Also on December 18, 2007, the CI called Brocks and subsequently went to her house. The CI purchased 4.0 grams of crack cocaine from Brocks for $300.

### 3. *The Search*

A search warrant was executed on the apartment on December 19, 2007, resulting in the seizure of 47.0 grams of crack cocaine and more than $6,000 in United States currency. A search warrant at Brocks' house did not result in the discovery of any drugs or weapons.

Task Force Officer Heinricy testified that following the search, Ross was *Mirandized* and agreed to be interviewed. According to Ross, Benjamin was the "leader" of the group, but Bolden, Cleaves, and Ross would provide money for the purchase of crack cocaine and would each then sell the crack cocaine. According to Ross, Benjamin provided the group with the crack cocaine. Ross told Heinricy that the enterprise had been going on in Cedar Rapids for about six weeks.

Task Force Officer Dale Moyle testified that he interviewed Cleaves following the search. After being *Mirandized*, Cleaves told Moyle that he and Ross were picked up in Chicago by Bolden and brought to Cedar Rapids. According to Cleaves, Benjamin also lived at the apartment and the four of them were engaged in selling crack. Cleaves told

4

Moyle that he believed Bolden and Benjamin were "partners." The crack cocaine was provided to the group by "Moose," who is Benjamin's cousin. Cleaves admitted doing ten to fifteen hand-to-hand transactions for $100 and ten to fifteen transactions for one-half ounce. According to Cleaves, Bolden had been selling crack cocaine for the last two years. Cleaves told Moyle that he had been in Cedar Rapids for three weeks, although he had visited Cedar Rapids in August for a couple of weeks. Cleaves said he had seen Benjamin with a gun four days earlier and he believed Benjamin and Bolden would "share" the weapon. According to Cleaves, Benjamin rented the apartment and paid the rent.

Task Force Officers Tim Hunt and Kelly Meggers interviewed Brocks. Brocks admitted using crack cocaine and also engaging in prostitution. Brocks told officers that Bolden is her boyfriend. According to Brocks, however, Bolden once held a gun on her and threatened to kill her after she testified in the Darius Whiting case. According to Officer Heinricy, Bolden and Whiting were previously stopped in Illinois and $13,000 was seized. Heinricy also testified that Brian Whiting reported that Bolden had given Darius Whiting money for purchasing crack. The CI also provided information to authorities that they had purchased crack cocaine from Bolden.

### B. Background Information

#### 1. John Bolden

According to the Pretrial Services Report, Bolden is twenty-seven years old and has lived in the Chicago, Illinois, area his entire life. While Bolden has never been married, he apparently lives with his girlfriend and their seven children. Bolden told the pretrial services officer, however, that he has been to Cedar Rapids "off and on" for the past one and a half years. Defendant has been employed at Norflo Construction in Chicago as a laborer since February 2006 and his supervisor confirmed that he could return to his job if he is released.

In 2001, Defendant was charged with driving while suspended, possession of cannabis, and operating a motor vehicle without insurance. Judgment was "withheld" on

5

the possession charge and the disposition of the remaining charges is unknown. In 2005, Defendant was charged with aggravated assault and carrying and possessing a firearm in public. Both of those charges were subsequently "stricken on leave." In 2006, Defendant was charged with resisting a police officer and subsequently spent four days in jail. Also in 2006, Defendant was convicted in Linn County, Iowa, of eluding and possession of a controlled substance and spent three days in jail on each charge.

### 2. *Wilson Cleaves*

According to the Pretrial Services Report, Cleaves is twenty-one years old. Cleaves has resided in Chicago with his sister and it was verified that he could return to that address if released. Cleaves is a lifelong resident of the Chicago, Illinois, area. Cleaves has never been married, but his girlfriend is apparently pregnant. Cleaves was previously employed doing home construction in the Chicago area and advised the pretrial services officer that he had done some construction work for "Denise" in Cedar Rapids. Cleaves did not know Denise's last name, however, and could not remember her phone number. Cleaves admitted to the daily use of marijuana.

Since 2000 (when Cleaves was fourteen years old), he has been arrested in the Chicago area for armed robbery, battery/bodily harm, robbery, battery/bodily harm, aggravated unauthorized use of a weapon on person, possession of cannabis, criminal trespass to vehicle, possession of cannabis, resisting a police officer, and manufacture/deliver of cannabis, ten to thirty grams. According to the Pretrial Services Report, however, the disposition of those charges is unknown.

### 3. *Clarence Ross, III*

According to the Pretrial Services Report, Ross is twenty years old and has lived his entire life in Chicago, Illinois. If released, he plans to return to Chicago and live with his mother. Defendant has never been married, but has a four-month-old child from a relationship with his girlfriend. Ross graduated from Southshore High School in 2005 and was employed at Wendy's from July 2006 until October 2007. Ross has no known

criminal record and his mother reported that he has never been arrested or been in any trouble with the law.

### 4. Nell Brocks

According to the Pretrial Services Report, Brocks is twenty-eight years old and has lived in Cedar Rapids her entire life. Defendant lives with her mother, one of her sisters, and one of her brothers. Defendant receives Social Security disability benefits, with her mother as payee. She also apparently cleans houses for cash. Brocks has never been married, but has three children from two different relationships, ages two to nine. Her children have been adopted out, however, after being taken away by the Iowa Department of Human Services.

Defendant's criminal record as an adult includes convictions for assault, assault causing bodily injury, assault, assault, interference with official acts, domestic abuse assault, harassment in the third degree (resulting from threats by Defendant that she would slice another person's throat with a butcher knife), theft in the fifth degree, disorderly conduct, disorderly house, interference with official acts, theft in the fifth degree, assault, and various driving offenses.

## III. CONCLUSIONS OF LAW

### A. Applicable Law

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, requires the Court to detain arrestees prior to trial in certain cases if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 481 U.S. at 755.

A finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the appearance of the person as required must be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition of combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the person was on probation parole, or other pretrial release; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

If the Court finds there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. The return of an Indictment by a Grand Jury is sufficient to support a finding by the Court that there is probable cause to believe that the Defendant committed the offenses identified in the Indictment. *United States v. Payne*, 660 F. Supp. 288, 291 (E.D. Mo. 1987), *aff'd*, 822 F.2d 1095 (table) (8th Cir. 1987). In a "presumption case," a defendant bears a limited burden of production--not a burden of persuasion--to rebut the presumption by coming

forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id.* *See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Application to the Facts

#### 1. John Bolden

Turning to the facts in the instant action, Bolden is charged with conspiracy to distribute crack cocaine, in violation of 18 U.S.C. § 836. At the preliminary hearing, the Court found probable cause to believe Bolden committed that offense. This charge establishes a rebuttable presumption pursuant to 18 U.S.C. § 3142(e) that there is no condition or combination of conditions which will reasonably assure the appearance of the person as required and the safety of the community.

While there is no evidence of a hand-to-hand transaction by Bolden, the evidence of a conspiracy involving Bolden would seem to be fairly strong. Officer Heinricy testified that the controlled buys were recorded by a digital and audio device. Bolden was present during a number of those buys and Ross and Cleaves reported Bolden's involvement in the enterprise. In addition, the confidential informant advised law enforcement authorities that they had purchased crack cocaine from Bolden at different locations. Bolden has prior controlled substance convictions in Illinois and Iowa.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community

if the Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial.

### 2. *Wilson Cleaves*

Cleaves is charged with distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). At the preliminary hearing, the Court found probable cause to believe Cleaves committed that offense. This charge establishes a rebuttable presumption pursuant to 18 U.S.C. § 3142(e) that there is no condition or combination of conditions which will reasonably assure the appearance of the person as required and the safety of the community.

The evidence suggests that Cleaves actively participated in three of the controlled buys -- on November 29, 2007, December 4, 2007, and December 17, 2007. Cleaves has been arrested numerous times for violent offenses and drug charges, but the disposition of those charges was unknown at the time of hearing. It does not appear that Cleaves has regular employment or a stable residence.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial.

### 3. *Clarence Ross, III*

Ross is charged with distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). At the preliminary hearing, the Court found probable cause to believe Ross committed that offense. This charge establishes a rebuttable presumption pursuant to 18 U.S.C. § 3142(e) that there is no condition or combination of conditions which will

reasonably assure the appearance of the person as required and the safety of the community.

The evidence suggests that Ross actively participated in two of the controlled buys -- on December 7, 2007, and December 13, 2007. Apparently, however, Ross has no prior criminal record. According to the Pretrial Services Report, Ross is a high school graduate and was employed at Wendy's for approximately fifteen months, prior to coming to Cedar Rapids. If released, Ross would return to Chicago and live with his mother. The pretrial services officer recommended that Ross be released prior to trial, with special conditions, including substance abuse testing, home confinement with electronic monitoring, and that he not associate with the codefendants. The Court finds that the recommendation should be accepted and Ross will be released pursuant to an Order Setting Conditions of Release filed contemporaneously with this Order.

### 4. Nell Brocks

Brocks is charged with distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). At the preliminary hearing, the Court found probable cause to believe Brocks committed that offense. This charge establishes a rebuttable presumption pursuant to 18 U.S.C. § 3142(e) that there is no condition or combination of conditions which will reasonably assure the appearance of the person as required and the safety of the community.

Brocks participated in two controlled purchases of crack cocaine at her home. While she is a lifelong resident of Cedar Rapids and is unlikely to flee, the Court believes that her release prior to trial would constitute a danger to the community. Brocks has six prior convictions for assault, two convictions of interference with official acts, and a harassment conviction resulting from threats to harm another person with a butcher knife.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community

if the Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial.

## IV. ORDER

IT IS THEREFORE ORDERED as follows:

1. Defendants John Bolden, Wilson Cleaves, and Nell Brocks are committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendants shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendants are confined shall deliver the Defendants to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. Defendant Clarence Ross, III shall be released after processing, pursuant to an Order Setting Conditions of Release filed contemporaneously with this Order. The United States Probation Office shall review the Order with Ross prior to his release and obtain his signature on a copy of the Order in the space provided on page four.

5. All parties are advised of their right to file a motion with the District Court for revocation or amendment of this Order, pursuant to 18 U.S.C. § 3145.

DATED this 27th day of December, 2007.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA